PJR/tab                                         Our File No. 5574-25085

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD EDWARDS and ANNIE BROOKS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 06 C 3110 |
| | ) |
| OFFICERS ROGOWSKI, NEGRON, | ) Judge David Coar |
| SHANKLE, JOHN DOE, JOHN SKOE, | ) Magistrate Judge Soat Brown |
| JANE DOE AND THE VILLAGE OF | ) |
| MELROSE PARK, A MUNICIPAL | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL ON ALL ISSUES, ISSUANCE OF REMITTITUR, AND/OR RECONSIDERATION**

NOW COME the defendants, LESLIE SHANKLE and STEVEN ROGOWSKI, by their attorneys, DOWD & DOWD, LTD., and pursuant to F.R.C.P. 50(a), 50(b), and 59(a), move this Honorable Court for entry of an order granting them judgment as a matter of law, or, in the alternative, a new trial as to all issues, or for remittitur of damages. Additionally, Defendants renew their previously filed Rule 50 motions for judgment as a matter of law.

**I.     INTRODUCTION**

Jury deliberations in this case commenced on February 28, 2008. After deliberating for nearly 5 hours, the jury returned a verdict in favor of Donald Edwards and against Steven Rogowski on the excessive force claim. As to Defendants Shankle and Negron, the jury found that they did not subject Edwards to excessive force. With respect to false arrest, the jury found in favor of Edwards and against Defendants Shankle and Rogowski. On Edwards' battery claim, the jury

1

found against Shankle and Rogowski but in favor of Defendant Negron. On Annie Brooks' intentional infliction of emotional distress claim, the jury found in favor of Defendants Shankle and Rogowski and against Annie Brooks (See Exhibit A attached hereto). For the reasons stated below, the court should award judgment notwithstanding the verdict or in the alternative grant a new trial on all issues[1]. Additionally, the defendants also request that this court issue a remittitur.

## II. IN VIEW OF THE IRRECONCILABLE VERDICTS REACHED ON THE BATTERY AND EXCESSIVE FORCE CLAIMS, DEFENDANT LESLIE SHANKLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, A NEW TRIAL ON ALL CLAIMS.

After deliberating for nearly five hours, the jury returned a verdict that is inconsistent and irreconcilable as to the battery and excessive force claims asserted against Leslie Shankle. While the jury found in favor of Ms. Shankle on the excessive force claim, it returned a verdict in favor of the plaintiff on the battery claim.

Illinois law defines a civil battery as the unauthorized touching of another person. Schroeder v. Lufthansa German Airlines, 875 F.2d 613, 622 (7th Cir.1989). Assault is defined as a threatening gesture that creates a reasonable apprehension of imminent battery. Kijonik v. Seitcinger, 363 F.3d 645, 647 (7th Cir.2004).

As a rule, civil juries must return consistent verdicts. Will v. Comprehensive Accounting Corp., 776 F.2d 665, 677 (7th Cir.1985). A party claiming that inconsistent verdicts have been returned is not entitled to a new trial "unless no rational jury could have brought back 'the verdicts that were returned'". Will, 776 F.2d at 678. A new trial on all claims is the appropriate remedy (rather than

---

[1] The defendants do not request a new trial as to the I.I.E.D. claim.

judgment as a matter of law) in a case in which the jury has returned inconsistent verdicts. Gordon v. Degelmann, 29 F.3d 295, 298 (7th Cir.1994). In determining whether a jury's verdict can be reconciled, the court must necessarily look closely at its own instructions. Deloughery v. City of Chicago, 422 F.3d at 617. With respect to the battery claim against Leslie Shankle, the following instruction was submitted to the jury:

> In this case, the Plaintiff Donald Edwards claims that Officer Leslie Shankle battered him. To succeed on his claim, Plaintiff must prove each of the following things by the preponderance of the evidence. Each defendant is entitled to separate consideration [sic]:
>
> (1) that the defendant intentionally or knowingly, without legal justification, caused bodily harm to him or made physical contact of an insulting or provoking nature with him;
>
> (2) as a result of Defendant's conduct, the plaintiff suffered an injury;
>
> (3) the defendant's conduct was the proximate cause of Plaintiff's injury. If you find that Donald Edwards has proved each of these things by a preponderance of the evidence, then you should find for the plaintiff and go on to consider the question of damages.
>
> If, on the other hand, you find that Plaintiff Donald Edwards did not prove any of these things by a preponderance of the evidence, then you should find for Defendant, Officer Leslie Shankle, and you will not consider the question of damages for this claim.
>
> (See Exhibit B)

With respect to the excessive force claim, the following instruction was tendered to the jury:

> You must decide whether Defendants' use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that Defendants faced. You must make this decision based on what the officer knew at the time of the arrest, not based on what you know now. In deciding whether Defendants' use of force was unreasonable, you must not consider whether Defendants' intentions were good or bad.

3

> In performing his job, an officer can use force that is reasonably necessary under the circumstances.

> (See Exhibit C)

The court also issued instruction identifying the law which is applicable to Edwards' battery claim:

> Under the Illinois law which is applicable to Donald Edwards' claim of battery, a police officer does not have to retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest.

> A police officer is justified in the use of any force which he reasonably believes to be necessary to affect the arrest and of any force which he reasonably believes to be necessary to defend himself.

> (See Exhibit D)

The jury specifically found that Officer Shankle did not use excessive force, but rather that the force she used was reasonable. As a result, Edwards' state law battery claim must necessarily fail. *See* Parker v. Village of Riverside, 2003 U.S. Dist. Lexis 3771 at n.24 (N.Ill. Mar.12, 2003); Askew v. City of Chicago, 2005 WL 1027092 (N.D.Ill.2005). Since the two verdicts are irreconcilable, Leslie Shankle is entitled to judgment as a matter of law (as to the battery claim) or a new trial on the battery and false arrest claim.

## III. THE DEFENDANTS ARE ENTITLED TO A NEW TRIAL BECAUSE OF EVIDENTIARY ERRORS THAT PREJUDICED THEIR CASE.

### A. Defendants Shankle and Rogowski are entitled to a new trial because the district court erred in denying the defense from introducing Officer Leitl's testimony.

Among the witnesses disclosed by the defendants was Officer Nathaniel Leitl, a police officer employed by the Oak Park Police Department. On July 2,

2005, Officer Leitl encountered the plaintiff at 914 Austin, Oak Park, Illinois (A copy of the relevant police report is attached hereto as Exhibit E). Had he been allowed to testify at trial, Leitl would have described an encounter he had with Edwards on July 2nd at 914 N. Austin, Oak Park, Illinois. Leitl was escorting a witness into the vestibule of the building located at 914 N. Austin when he was approached by Donald Edwards and an unknown female (See Exhibit E). Edwards told Leitl that he would not allow him inside the building and did not care if he was a police officer. Id. When Leitl attempted to enter the building, Edwards shut the door on his hand. Id. An altercation ensued and Edwards raised a wooden cane over his head and threatened to strike Leitl. Edwards then ran up the stairwell and fled into an unknown apartment. Id. Leitl's testimony was probative inasmuch as Edwards specifically testified that as of July 2, 2005, he was still suffering from the effects of his alleged injuries:

> Q. So on July 2, 2005, you were still experiencing pain and weakness and discomfort in your left leg, correct?
> A. Yes.
> Q. You weren't back to normal at that point, is that correct?
> A. No.
> Q. You were still not back to normal now. Okay. On July 2, 2005, were you able to run normally?
> A. No.
> Q. Were you having any difficulty going up and down stairs on July 2, 2005?
> A. Yes, I still have some today.
> Q. No, I'm just asking no July 2, 2005.
> (See pp.135-136 of Exhibit F)

FRE 401 specifically defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without

5

the evidence". Here, Plaintiff's alleged injuries as well as the manner in which they were allegedly sustained were consequential to the determination of a number of issues in this lawsuit, including, but not limited to, credibility and damages. Barring Officer Leitl's testimony caused unfair prejudice to the defendants, especially since the defendants agreed to forego questioning Officer Leitl about his occupation and the circumstances which lead to surrounding his presence at 914 N. Austin. Since the probative value of Leitl's testimony outweighed any prejudice to the plaintiff, the defendants were denied a fair trial and should receive a new trial on all issues.

**B. The trial court improperly limited Defendants' ability to impeach Annie Brooks.**

A witness may be impeached with prior inconsistent statements. *See* Lentomyynti Oy v. Medivac, Inc., 997 F.2d 364, 373 (7th Cir.1993) and FRE 613. At several points during Plaintiffs' case in chief, the defense sought to impeach Annie Brooks with deposition testimony that contradicted her trial testimony. During her direct testimony, Annie Brooks stated that Lieutenant Rogowski showed her his badge and told her to "get the fuck out of the way" (See p.24 of the transcript of trial testimony attached hereto as Exhibit G). However, at her deposition, Plaintiff identified Officer Rodriguez as the individual who showed him the badge and told her to "get the fuck out of way" (See p.96 of Brooks' deposition testimony attached hereto as Exhibit H). Given the obvious contradiction between Brooks' trial testimony and her previously sworn deposition testimony, the defense should have been allowed to impeach Brooks. Brooks' identification of Lieutenant Rogowski as the individual who made that statement could only inflame the jury and undoubtedly caused the jury to assess punitive damages against Lieutenant Rogowski.

Likewise, at her deposition, the plaintiff identified Officer Rodriguez, a non-party, as the officer who allegedly knocked her son down (See pp. 80-81 of Brooks' dep test, Exhibit H). At trial, Brooks testified that she did not know which of the officers was responsible for knocking her son down. In view of the jury's findings against Lieutenant Rogowski and Officer Shankle, this ruling denied Defendants the opportunity to highlight an obvious inconsistency in Brooks' testimony and denied them the opportunity to attack her credibility. Accordingly, the defendants are entitled to a new trial as to the battery, excessive force and false arrest claims.

**C.** **The court's refusal to allow Defendants to introduce evidence which, if believed, would show that there was probable cause to arrest Edwards for disorderly conduct warrants a new trial on all issues.**

During its direct examination of Lieutenant Rogowski, the defense sought to elicit testimony about a conversation he had with complaining witness, Madonna Schultz. Ms. Schultz advised Lieutenant Rogowski that she had encountered the plaintiff before he was arrested and the plaintiff had called her a "fucking bitch". Opposing counsel objected on the basis of hearsay. In response, the defense stated that the testimony was not offered for the truth of the matter asserted but to show effect on the listener and to explain why Edwards was arrested for disorderly conduct. This testimony was probative on the issue of probable cause inasmuch as it is undisputed that Edwards was arrested for disorderly conduct. While the jury may have concluded that there was no battery or resisting arrest, the jury nevertheless could have concluded that Schultz's statement to Rogowski was credible and amounted to probable cause to arrest Edwards for disorderly conduct. It is well settled that the existence of probable cause is an absolute bar to a false arrest claim.

As a result, the court's refusal to allow this testimony in evidence was prejudicial and warrants granting a new trial on all issues.

**D. The district court erred by allowing the plaintiff to offer testimony, over defense objection, to the effect that Edwards "heard people screaming" or saying "why are you doing this. . . "**

During direct examination, Mr. Edwards offered testimony to the effect that he heard people screaming and saying "why are you doing this, what's going on". Defense moved to strike the testimony on the basis of hearsay and that objection was overruled (See p. 98 of Edwards' trial testimony, Exhibit F). The testimony from these unknown individuals constituted obvious hearsay. At no point in time did the plaintiff articulate any exception to the hearsay rule that would permit this type of testimony.

**E. The distict court erred by allowing the plaintiff to offer testimony as to why he did not seek follow-up medical treatment.**

Despite a defense objection, the plaintiff was allowed to offer testimony as to why he did not seek follow-up care. He claimed that he "could not afford healthcare [because it was expensive]" (See pp.118-119 of the Trial Transcript, Exhibit F). Defense moved to strike the testimony but that motion was denied. Inasmuch as the wealth or poverty is irrelevant, this testimony should not have been allowed. In order to effectively counter this testimony, the defense would have to engage in an extensive, wide-ranging inquiry that would resemble a citation to discover assets. Since the nature, extent and duration of Edwards' alleged injuries was a paramount issue, allowance of this inadmissible, self-serving testimony was improper and warrants a new trial as to Edwards' battery, excessive force and false arrest claims.

**F.     Edwards' improper comments about Judge Lefkow's rulings concerning the number of photos that could be introduced at trial warrants a new trial on all issues.**

During cross-examination, Mr. Edwards was asked to identify the number of photographs his wife had taken of his alleged injuries. In response, Edwards stated, "I'm not sure, but I have a number of pictures. . . but the court would only allow three" (See p.165 of the trial transcript, Exhibit F). Mr. Edwards' commentary was improper inasmuch as cross-examination is hardly the time to contest or otherwise question a court's ruling on the reception of evidence. Edwards' comments suggested that there were in fact other photographs that showed his alleged injuries but the court and the defense barred those photographs from being shown to the jury. Moreover, this court specifically directed Plaintiffs' counsel to produce these additional photos on February 26th at 8:45 a.m. No such photos were ever produced. Edwards' editorial comment, coupled with the repeated violations of Judge Lefkow's in limine order, generated confusion which denied Defendants a fair trial.

**IV.    DEFENDANTS ARE ENTITLED TO A NEW TRIAL ON ALL ISSUES BASED ON CERTAIN ERRORS THE DISTRICT COURT MADE IN INSTRUCTING THE JURY.**

**A.     The court's refusal to issue an instruction defining the offense of disorderly conduct, battery and resisting arrest resulted in unfair prejudice to the defendants.**

The jury returned a verdict against Lieutenant Rogowski and Officer Shankle on Edwards' false arrest claims. It is undisputed that the plaintiff was arrested for three offenses: battery, resisting arrest and disorderly conduct. Nevertheless, the district court did not instruct the jury on the elements of these offenses. The failure to

include such instructions made it impossible for the jury to determine whether there was probable cause to arrest Edwards for those offenses.

**B.     The court's refusal to issue instruction requiring the jury to utilize the "clear and convincing" standard for assessing punitive damages denied Defendants a fair trial.**

The federal courts have acknowledged that punitive damages are similar or comparable to the fines and penalties that may be imposed in criminal cases. As a result, the district court's decision to permit the jury to decide the punitive damages issue using the "preponderance of evidence standard" as opposed to the clear and convincing standard urged by the defense denied Defendants a fair trial on the issue of punitive damages.

**C.     The court's instruction concerning a police officer's authority to conduct a brief investigatory stop was confusing and did not conform to the evidence introduced at trial.**

After an extensive jury instruction conference, the court issued the following instruction, which described when and under what circumstances a police officer may conduct a brief, investigatory stop:

> A police officer who has probable cause to make an arrest, or a reasonable articulable suspicion that criminal activity is afoot, may conduct a brief, investigatory stop. Reasonable suspicion exists when, viewing all the circumstances objectively, the officer has specific facts that reasonably lead to [sic] him to believe that the person did commit, is committing, or is about to commit a crime. Reasonable suspicion does not necessarily rise to the level of probable cause.
>
> If the officer does not have probable cause to make an arrest, or reasonable articulable suspicion that criminal activity is afoot, when he approaches an individual, the individual has the right to ignore the police and go about his business.

> Refusal to cooperate may be a factor in determining reasonable suspicion. Unprovoked flight from the police, without warrant, constitutes reasonable suspicion.
>
> (See Exhibit I)

This instruction was improperly given inasmuch as it did not conform to the testimony introduced at trial. Instructing the jury that an individual "has the right to ignore the police and go about his business" may be an inaccurate statement of the law. However, if believed, Edwards' own testimony shows that he did not ignore the police or "go about his business" (**S**ee p.95 of Edwards' trial testimony, Exhibit F). This instruction was also improperly given inasmuch as it suggested that the only issue to be determined was whether the officers had a reasonable suspicion to conduct an investigatory stop. Even if reasonable suspicion did not exist, Edwards did not have either a statutory or constitutional right to resist arrest. This instruction suggests or implies that if there was no reasonable suspicion for the investigatory stop, the officers could not arrest Edwards even if he resisted arrest or committed other crimes such as battery and/or disorderly conduct subsequent to the stop. Given the nature of the allegations in this case and the conflicting testimony, this instruction could only confuse and mislead the jury. As a result, the court should order a new trial on all issues for Defendants Rogowski and Shankle.

### V. GIVEN THE PLAINTIFFS' REPEATED VIOLATIONS OF JUDGE LEFKOW'S IN LIMINE ORDER, THE DEFENDANTS ARE ENTITLED TO A NEW TRIAL ON ALL ISSUES.

Defendants' motion in limine #9 sought to bar the plaintiffs and their attorneys from introducing any testimony, argument or suggestion to the effect that any medical care received by Annie Brooks was related to the June 23, 2005 incident.

During the course of the hearing, Judge Lefkow indicated that she would grant motion in limine #9 and would bar the plaintiffs and their attorneys from introducing any testimony or argument concerning any medical treatment Annie Brooks received subsequent to June 23, 2005. The court's order notwithstanding, both plaintiffs offered testimony concerning medical treatment and hospitalizations Ms. Books received subsequent to June 23, 2005 (See pp. 28-29 of Exhibit G pp.111-112 of Exhibit F). Judge Lefkow's order was not particularly complex, arcane, or ambiguous. The plaintiffs and their attorneys were ordered not to introduce testimony concerning medical treatment Ms. Brooks received subsequent to Mr. Edwards' arrest. The fact that both plaintiffs violated the order and that there were three separate violations shows that the violations cannot be attributed to inadvertence or absentmindedness. Rather, Plaintiffs' repeated failure to follow Judge Lefkow's orders shows that they acted contumaciously and in bad faith. In view of the verdict in favor of Mr. Edwards as well as the punitive damages award, the effect of these violations cannot be minimized. As a result, the defendants should receive a new trial as to the battery, excessive force (Rogowski only) and the false arrest claims.

### VI. DEFENDANTS ARE ENTITLED TO A NEW TRIAL ON THE ISSUE OF DAMAGES OR, ALTERNATIVELY, TO A REMITTITUR BECAUSE THE EVIDENCE DID NOT SUPPORT THE JURY'S COMPENSATORY AWARD.

A new trial may be warranted where a compensatory damage award is excessive or inflated. When a court determines that a damage award is excessive, a remittitur – and not a new trial – is appropriate. Davis v. Consolidated Rail Company, 788 F.2d 1260, 1263 (7th Cir. 1986). A remittitur has been approved for

use in cases where a compensatory damage award is proportional to the plaintiff's alleged injuries. Avitia v. Metro Public of Chicago, Inc., 49 F.3d 1219, 1229 (7th Cir.1995). Even when viewed in the light most favorable to the plaintiff, the evidence does not establish emotional suffering, pain or other injury sufficient enough to support a $4,500.00 compensatory damages award. Accordingly, a new trial on the issue of damages or, alternatively, a remittitur is appropriate.

## VII. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, A NEW TRIAL ON PLAINTIFFS' PUNTIIVE DAMAGES CLAIM.

Although a punitive damages award may be appropriate in some cases to punish a wrongdoer for his or her outrageous conduct and to deter others from engaging in similar conduct, such awards must be supported by the record and may not constitute merely a windfall to the prevailing party. Ramsey v. American Air Filter Company, Inc., 772 F.2d 1303, 1314 (7th Cir.1985). If the court concludes that a jury's award of punitive damages is merely a windfall, it may reverse that award. Id.

In State Farm Mutual Automobile Insurance Company v. Campbell, 538 U.S. 408, 419 (2003), the Supreme Court reiterated the factors which should be applied in determining whether a punitive damages award is unconstitutionally excessive. The court also provided cautionary guidance as to the circumstances under which a punitive damages award may be justified in any number. Specifically, the court explained that "it should be presumed the plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so

reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence". Id, citing BMW of North America, Inc., v. Gore, 517 U.S. 559, 575-77 (1996). These principles require entry of judgment as a matter of law in favor of the defendants on Plaintiff's punitive damages claim.

With respect to Officer Shankle, the jury specifically found that she did not use excessive force during the course of the incident. As a result, the punitive damage award should be vacated in its entirety as to Officer Shankle. With respect to Lieutenant Rogowski, Plaintiff has failed to produce any evidence which shows that his conduct was malicious or in reckless disregard of Edwards' rights. Accordingly, Defendants are entitled to judgment as a matter of law as to the punitive damages claim or, alternatively, a new trial on all issues or a new trial as to damages only.

In the event the court concludes the punitive damages claim was properly submitted to the jury, the award must be remitted due to excessiveness. *See* Davis v. Consolidated Rail Corp., 788 F.2d 1260, 1263 (7th Cir.1986). A court may set aside a jury's award of punitive damages when it is certain that the amount awarded exceeds what is necessary to serve the objectives of deterrence and punishment. U.S. E.E.O.C. v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1287 (7th Cir.1995). The Supreme Court has specifically held that excessive punitive damages are unconstitutional if they violate a defendant's due process rights. Gore, *Supra,* 517 U.S. at 586. In determining whether punitive damages are constitutional, the Supreme Court has provided three guideposts which guide a court's inquiry. Id. at 575. The court must look at (1) the degree of reprehensibility of Defendant's conduct; (2) the disparity between the harm or potential harm and the punitive

damages award; and (3) the difference between this remedy and civil penalties authorized or imposed in comparable cases. Id.; *See also* Farfaras v. Citizens Bank & Trust of Chicago, 433 F.3d 558, 567 (7th Cir.2004). When these guideposts are not followed and an excessive award is allowed, due process is violated. Id.[2]

These cautionary guidelines apply with full force to the punitive damages award entered in this case. Since the jury found that Officer Shankle did not use unreasonable force, the award should be vacated in its entirety as Edwards failed to produce evidence showing that her conduct was reprehensible. As for Lieutenant Rogowski, the plaintiff failed to produce specific evidence identifying conduct which could be considered reprehensible. Edwards could only state that certain officers piled on to him and began beating him. Edwards failed to identify the specific acts of misconduct which would justify imposing punitive damages award Lieutenant Rogowski.

Vacatur or reduction of the punitive damages award is warranted given the disparity between the harm allegedly inflicted and the award itself. The photographic and medical evidence introduced at trial belie Plaintiff's claims of a prolonged, severe beating. Edwards testified that he was lying on his back during the course of the beating and was repeatedly struck on his neck, back and on the posterior side of his legs. Despite being repeatedly struck on his back, neck and legs, Edwards produced neither photographic nor medical evidence which would confirm that he was in fact beaten while lying on the ground. The only evidence he produced shows that he suffered scrapes and lacerations to his knees, injuries that could hardly be

---

[2] These guideposts govern the determination of the excessiveness even in the absence of a finding that any constitutional infirmity was presented by the amount of the award. Fall v. Indiana University Board of Trustees, 33 F.Supp.2d 729, 744 (N.D.Ind.1998).

caused by kicks and punches. He received no follow-up treatment of any kind and produced little, if any, evidence which shows that he suffers from any complaint or disability associated with his alleged injuries.

A review of the regulatory or criminal penalties to which the defendants may have been exposed by engaging (allegedly) in the conduct described in the plaintiffs' complaint underscores the award's excessiveness. 720 ILCS 5/12-5(a) provides as follows:

> "A person who causes bodily or endangers the bodily safety of an individual by any means, commits reckless conduct if he performs recklessly to acts which cause the harm or endanger safety, whether they otherwise are lawful or unlawful. This is a misdemeanor, punishable up to a year's imprisonment or a fine of $2,500.00 or both".
> 725 ILCS 5/12-5(b).

Here, the award exceeds by a factor of ten, the maximum fine that may be assessed for engaging in similar conduct.

Finally, the punitive damages award is five times larger than the compensatory award and thus amounts to a windfall and as such violates the due process clause.

WHEREFORE, the defendants, LIEUTENANT ROGOWSKI, OFFICER SHANKLE, and the VILLAGE OF MELROSE PARK, pray for entry of an order granting them judgment as a matter of law, or alternatively, a new trial on the battery, excessive force (Rogowski only) and false arrest claims or a remittitur of the damages awarded in favor of Edwards. The defendants also renew their previously filed Rule 50 motions for judgment as a matter of law and pray that those motions be granted in their entirety.

DOWD & DOWD, LTD.

By: /s/ Patrick J. Ruberry
Attorneys for Defendants Shankle and Rogowski

Patrick J. Ruberry
Dowd & Dowd, Ltd.
617 West Fulton Street
Chicago, IL 60661
Tx: 312/704-4400

**CERTIFICATE OF SERVICE**

I, an attorney, state that Defendants' Motion for Judgment as a Matter of Law was served electronically to all law firms of record via ECF on March 10, 2008.

                                DOWD & DOWD, LTD.

                    By:    /s/ Patrick J. Ruberry
                               Attorneys for Defendants Shankle and Rogowski

Patrick J. Ruberry
Dowd & Dowd, Ltd.
617 West Fulton Street
Chicago, IL 60661
Tx: 312/704-4400