3118-137

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONALD EDWARDS,               )
                                          )
            Plaintiff,      )
vs.                        )    Case No.  06 CV 3110
                                          )
VILLAGE OF MELROSE PARK, et al.,   )    Judge Coar
                                          )
            Defendants    )

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES**

Now come the defendants, Donald Rogowski and Leslie Shankle, by their attorneys, Litchfield Cavo LLP, and submit their Memorandum of Law in opposition to plaintiff's motion for attorney's fees.

**I.    INTRODUCTION.**

On February 28, 2008, the jury returned what can only be described as a mixed verdict:

- Excessive force -- for Donald Edwards and against Lt. Rogowski;

- Excessive force -- for Leslie Shankle and Philip Negron and against Donald Edwards;

- False arrest -- for Donald Edwards and against Leslie Shankle, and Lt. Rogowski;

- Battery -- for Donald Edwards and against Leslie Shankle and Lt. Rogowski;

- Battery -- for Philip Negron and against Donald Edwards;

- Intentional infliction of emotional distress -- for defendants Shankle and Rogowski and against Annie Brooks.  (See Exhibit "A").

The jury awarded Edwards a total sum of $29,500; $4,500 in compensatory damages and $25,000 in punitive damages.   After the plaintiffs rested their case, they made a demand of $60,000; $30,000 to be paid to Donald Edwards and $30,000 to be paid to his attorneys.   (See Exhibit "B").   During closing arguments, Brendan Shiller asked the jury to award a total sum of $500,000 to the plaintiffs.   Given Mr. Edwards' limited success at trial, his $86,000 fee request is unreasonable and should be denied.

The petition should also be denied inasmuch as the plaintiffs have engaged in block billing and have, by their own admission refused to separate compensable work from non-compensable work.   (See pages 3 and 4 of plaintiff's memorandum.)

In an attempt to resolve the fee issue, the defendants submitted a chart which identifies those billing entries that are non-compensable or amount to block billing.   For their part, plaintiff's counsels refused to amend or otherwise alter their fee request and chose not to revise their petition to eliminate the many instances of block billing and can only argue that "he did not block bill as all work is compensable."   (See page 3 of plaintiff's response).

Finally, the plaintiffs have failed to produce evidence of any kind which would justify the hourly rates identified in their fee motion.

## II.   NO FEE SHOULD BE AWARDED BECAUSE THE BENEFIT RECEIVED BY EDWARDS WAS MINIMAL.

As was shown above, Edwards' success at trial was at best mixed.   The jury awarded only a fraction of the amount requested during closing argument ($500,000), and less than 50% of his last demand ($60,000).   Ordinarily, a plaintiff who prevails on a lawsuit brought pursuant to 42 USC section 1983 is entitled to a fee under section 1988.   *Hensley vs. Eckerhart*, 461 U.S. 424 (1983).   In *Farar vs. Hobby*, 506 U.S. 103 (1988), the Supreme Court recognized that an award in favor of the plaintiff does not always justifies a fee.   The *Farar* court made it clear that

in civil rights fee litigation, the district court is obligated to analyze the question to decide what is the proper fee.  Results determine whether it merits a fee recovery.  *Id.*  For its part, the Seventh Circuit has concluded that a disparity between the amount sought and the result achieved justifies a denial because of marginal success.  See *Fisher vs. Kelly*, 105 F.3d 350 (7th Cir. 1997); *Fletcher v. City of Fort Wayne*, 162 F.3d.  975 (7th Cir. 1998).

Here, the plaintiff was awarded 5% of the amount his counsel asked the jury to award and less than 50% of his final pre-verdict demand.  (See Exhibit "B").  Given Edwards' limited success at trial, his request for fees should either be denied or pared down significantly.

## III.   EVEN IF THE COURT BELIEVES THAT EDWARDS IS ENTITLED TO A FEE, A NON- LODESTAR APPROACH SHOULD BE UTILIZED.

Should this Court determined that the plaintiff is entitled to a fee recovery, the lodestar method should not be used.  Using two years of counsels' billing at excessive rates as a benchmark for a case in which the plaintiff received a fraction of the amount sought prior to trial or verdict is wholly inappropriate.  *Farar* stands for the proposition that the lodestar process may be jettisoned based on the following three factors:  (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation.

The first factor is afforded the most weight, while the second and third are afforded considerably less.  Consideration of each of the factors weighs heavily in favor of utilizing a non-lodestar method.  The difference between the amount awarded and the amount sought by plaintiffs militates strongly in favor of a non-lodestar approach.  Application of the second and third factors to the litigation also warrants using an alternative method.  In his motion and supporting memorandum, Edwards identifies no significant legal issue raised in this case, nor has he attempted to argue the public purpose of this litigation is significant.

Once the lodestar method is jettisoned, the next question to decide is what is the proper fee. Would a private client pay plaintiff's counsel's sum of $86,000 in order to collect $29,500? Plaintiff does not address this pivotal issue and his failure to do so is understandable. Additionally, defense counsel specifically asked the Willis Law Offices to produce any fee agreement that was signed by Mr. Edwards, and Mr. Willis responded by claiming, "I do not believe that it is relevant to this case. . ." (See Exhibit "C"). Additionally, it appears that the Willis Offices have no information regarding rates paid by other clients for the simple reason that it "charges on a contingency basis for civil cases, and thus has no bills paid by clients in relation to [its] civil practice." (See Exhibit "C", attached hereto, Standish Willis' correspondence dated June 2, 2008). The court and the defendants can properly assume that the Willis Offices took this case on a contingency basis. The standard fee for contingency work in the City of Chicago runs anywhere from 25% to 40%. As a result, an appropriate fee for the Willis firm would run somewhere between $9,000 and $10,000. *Cole vs. Wodziak*, 169 F.3d 486 (7th Circuit 1990) directs the district courts to take a market approach to setting attorneys fees. Here, Edwards seeks $86,000 in fees, an amount 3.5 times greater than the jury award. An attorney who charges a client $86,000 to collect $29,500 would not survive in a free market environment. Accordingly, defendants believe that if a fee is awarded, it should not exceed 1/3 of the amount awarded to Edwards.

**IV.   SHOULD THE COURT APPLIED THE LODESTAR APPROACH, IT SHOULD BE GREATLY ADJUSTED DOWNWARD.**

**A.      The fees requested by Edwards' counsel should be significantly reduced.**

Congress has determined that a prevailing civil rights plaintiff is entitled to a "reasonable fee." *Simpson v. Sheahan*, 104 F.3d 998, 1003, (7th Circuit 1997). A reasonable fee is one which is sufficient to induce counsel to handle the plaintiff's case, but no larger. *Id.* A reasonable

hourly rate should be based on the market rate for services rendered.  *Id*.  The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the work in question.  *Spegon v. The Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Circuit 1999).   While an attorney's actual billing rates for comparable work is "presumptively appropriate," if the attorney has no fee-paying client, then the District Court is to look for the next best evidence. *Id*. The applicant has the burden of establishing a market rate and in doing so cannot rely on self-serving affidavits. *Id*. 554-556.   The burden lies with the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services provided by lawyers of reasonably comparable skill, experience and reputation.  *Blum v. Stenson*, 465 U.S. 886, 895, n. 11.  104 S.Ct. 1541 (1984).  To meet this burden, a fee applicant is required to present some evidence by submitting affidavits from similarly experienced attorneys attesting to the rates they charge <u>paying</u> (emphasis added) clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases.  *People Who Care v. Rockford Board of Education*, 90 F.3d 1307-1310-12 (7th Cir. 1996).

Attorneys Lockett, Willis and Harris can only argue that they are "entitled" to the hourly rates set forth in their motion.   While they contend that "the prevailing market rate in the community for comparable attorneys should determine the hourly rate," they singularly fail to (1) establish the prevailing market rate for comparable attorneys; and (2) identify paying clients who have freely paid them the hourly rates sought in the fee petition.  They can only offer self-serving affidavits, which may not be used in establishing a market rate.  See *Spegon* at 554-56. As for Mr. Willis, his affidavit states that he has been practicing law for over 25 years and is thus entitled to be compensated at a rate of $450 per hour.  Despite his practicing for over a quarter

century, he is unable to identify a single opinion or order which has approved any hourly rate, let alone $400 per hour.  The same can be said of attorneys Lockett and Harris.  Neither can identify a single case in which a court has awarded them fees based on the hourly rates claimed ($225 per hour for Angela Lockett and $300 per hour for Teniece Harris).  While Ms. Lockett claims that she was paid at a rate of $225 per hour in the *Brown* matter, a review of the docket shows that no order was ever entered approving the hourly rate claimed, and that no fee petition was ever filed in that case.  (See Exhibit "D").  Instead the parties' entered into a written settlement agreement that was filed on February 21, 2008.  The settlement agreement does not mention or even allude to the payment of fees to Ms. Lockett.  Additionally, Ms. Lockett has failed to produce any evidence which shows that the City paid her fees and does not even identify the amount allegedly paid to her firm.

Plaintiff finds it "absolutely incredible" that defendants did not object to Mr. Shiller's claimed hourly rate.  The reason is simple.  Unlike Mr. Willis and his associates, Mr. Shiller identified clients who have paid him $225 per hour for legal work.  Under no circumstance do defendants concede that Ms. Lockett is entitled to the same hourly rate as Mr. Shiller.  Lead counsel for the defendants has practiced law for nearly as long as Mr. Willis, but nevertheless, his time was billed at a rate of $130 per hour.  (See Exhibit "E", attached hereto).  The key difference between Mr. Ruberry and Mr. Willis is that the former's hourly rate is the product of real market forces, while Mr. Willis' hourly rate is based entirely on his own subjective belief and nothing more.  Edwards does argue that "just because defense [sic] counsel bills below market rate does not mean that the plaintiffs [sic] counsel must also."  Under no stretch of the imagination have Edwards' counsel established a "market rate" for their services.  If a market exists, it exists in their imagination, only.  What Edwards calls "market" is nothing more than a

cartel.  Obviously, the consumer or defendant has no ability to affect or influence the rates, so the cartel's prices or "market rates" are set by its members, who oblige one another by providing self-serving affidavits which purport to identify a "market rate."  The burden lies with Edwards' counsels to establish their entitlement to the hourly rate sought.  The affidavits submitted by various attorneys provide little assistance, as several judges in the circuit have held that "logrolling or cheerleading of this type" is not helpful.  *Barnett v. City of Chicago*, 122 F. Supp. 2d 915, 917 (N.D. Ill. 2000); *Medina v. City of Chicago*, 2001 WL 1104600 (N.D. Ill. Sept. 14, 2001).  To support their fee application, plaintiffs have submitted affidavits from Steven Saltzman and Flint Taylor.  Mr. Saltzman's declaration is dated September 24, 2004, and was filed in a case pending before the State of Illinois Human Rights Commission.  Mr. Saltzman is unable to identify any client who has actually paid him $400 per hour.  He could only offer his subjective belief as to what reasonable hourly rate is for Mr. Willis.  This belief is not supported by any real evidence, such as prior fee awards or actual paying clients who have agreed to pay Mr. Willis or, indeed, Mr. Saltzman, $400 per hour.  More important, it appears that Mr. Saltzman's affidavit was submitted to the Human Rights Commission in connection with a fee petition or application for fee award.  Mr. Willis has not identified this particular case as one in which he received a fee award, and thus, this court can properly conclude that the Human Rights Commission did not award fees to Mr. Willis or at the very least, did not approve his requested rate of $400 per hour.  As for Mr. Flint Taylor's affidavit, it appears to be a least 4 years old and was apparently filed in connection with a matter pending before the Cook County Commission on Human Rights.  The nature of the work Mr. Willis performed in connection with this unknown matter is not disclosed or otherwise described, and Mr. Edwards' Rule 54.3

submissions do not state whether the Commission awarded him fees, and if so, at what hourly rate.

Mr. Willis is apparently unable to identify (1) a client who has actually paid him $450 per hour; or, (2) a court or other tribunal that has found that he should be compensated at that hourly rate. The defendants asked Mr. Willis to produce his fee agreement which would, perhaps, show that Mr. Edwards had, in fact, agreed to hire him for $450 per hour. In view of his failure to produce the agreement, this court may draw a negative inference and conclude that Mr. Willis is unable to establish his claimed hourly rate. The burden lies with Mr. Willis and his associates to produce satisfactory evidence in support of their requested hourly rates. In view of their failure to meet this burden, their request for a Lodestar award must be denied.

Similarly, the rates sought for attorneys Lockett and Harris are unsupported by competent evidence and are based entirely on self-serving affidavits. Ms. Lockett has submitted a self-serving affidavit of her own in which she claims that she was paid $225 per hour in connection with sanctions entered in a discovery dispute. Although the sanctions were apparently awarded less than two years ago, she is unable to produce any evidence which shows that (a) she petitioned for the fees or submitted a bill to the City of Chicago; and (2) evidence that the City actually paid the sanction. Since the case was subsequently settled, pursuant to a written settlement agreement, (See Exhibit K, attached hereto) and the settlement agreement makes no mention of any fee or sanction award, the court can properly infer that no sanctions were paid. The affidavits of Kathleen C. Ropka and Shehnaz I. Mansuri were submitted to show that Ms. Lockett's requested rate is unreasonable and not reflective of any "market rate" that reportedly exists in the Northern District of Illinois. Ms. Mansuri and Ms. Ropka have been practicing for 10 and 15 years, respectively. Their hourly rate in 2006 was $250 per hour, $25

more per hour than the rate sought by Ms. Lockett, an individual who has been admitted to practice law for less than four (4) years. (See Exhibits L and M). Since self-congratulation is no substitute for evidence, the hourly rate sought for attorneys Lockett and Harris should be reduced to $165 per hour and $175 per hour, respectively. As for Mr. Willis, in view of his failure to identify any paying client who has agreed to pay him $450 per hour, his hourly rate should be set at $225 per hour.

## V.   THE HOURS EXPENDED BY PLAINTIFFS COUNSELS ARE UNREASONABLE AND EXCESSIVE.

Edwards bears the burden of showing that the number of hours expended on this case was reasonable. *Hensley* 461 U.S. 424, 433 (1983). The Supreme Court has directed counsels to "make a good-faith effort to exclude from the request excessive, redundant or otherwise unnecessary." *Id*. at 434. Seventh Circuit case law teaches that "unreasonable hours should not be compensated". *People Who Care v Board of Education*, 90 F.3d 1307, 1314, (7th Circuit 1996). Nothing in the existing case law requires the District Court to accept at face value the number of hours of work at issue, allegedly required. On May 9, 2008, defendants submitted a chart which identifies flaws and deficiencies in opposing counsels' time entries. Nevertheless, opposing counsels did not revise, amend or alter a single entry. Edwards' counsels have (a) failed to properly account for their time; (b) engaged in excessive intra-office conferences; (c) billed for time spent on claims in which they did not succeed; (d) engaged in block billing; and billed for time spent on non-compensable claims; and (e) charged excessively for non-attorney tasks.

### A.   Edwards does not properly identify the work done.

At several points, plaintiff's attorneys have failed to identify time spent on a particular task. Consequently, it is impossible to determine how much time was devoted to any one task.

This failure to present sufficient time records can result in a reduction of the hours requested. *See, Hensley*, 461 U.S. at 441; *Tomazzoli v. Sheedy*, 804 at 2d, 93, 97 -- 98, n.5 (Seventh Circuit 1986) (The court may eliminate hours that are not documented in sufficient detail).  The courts of the circuit have also found that block billing is inappropriate and may prevent the court from assessing the reasonableness of the time expended.  *JMS Development v. Bulk Petroleum*, 2002 WL 31101764 (N.D. Ill. 2002); *Kinney v. Federal Security, Inc.*, 2002 WL 31017644 (N.D. Ill. 2002).   Any time entry that describes both compensable and non-compensable time must be rejected.   *Bennett v. Smith*, 2002 WL 169323 (N.D. Ill. Feb. 1, 2002) (All block billed time disallowed); *Abbott v. Village of Winthrop Harbor*, 1999 WL 675292 (N.D. Ill. 1999) (All block billed time disallowed)*; Rays v. National Title Agency*, 2001 WL 687451 (N.D. Ill. 2001); *Poyner v. Community School District #300*, 1999 WL 11015660 (N.D. Ill. 1999).   Pursuant to local rule, defense counsel provided a detailed chart which identified each instance of block billing.  This chart was provided to plaintiff's counsel on or about May 9, 2008.  Notwithstanding defendants' efforts, plaintiff's counsel made no effort to eliminate or modify those entries which contain block billing.   Accordingly, each block-billed time entry should be disallowed.   (See Exhibit "F").

**B.      Edwards has sought recovery for claims on which he did not prevail.**

Precedent teaches that in order to recover fees under section 1988, one must be a prevailing party, (42 U.S.C. Section 1988).   The plaintiff should not be allowed to recover for any work expended on claims in which he did not prevail.  Where federal and state claims are factually or legally related, they should be treated as one for purposes of a section 1988 award. *Munson v. Milwaukee Board of School Directors*, 969 F.2d 266, 277 (7th Circuit 1992).   With respect to non-federal claims, the issue is not whether the state law claim is successful, but

whether it is related to a successful constitutional claim. *Lenard v. Argento*, 808 F.2d 1242, 1245 (7th Circuit 1987).  In *Lenard*, the Seventh Circuit determined that excessive force and malicious prosecution claims are not related for purposes of this section 1988 the award.  *Id*.  Although Edwards did not prevail on his malicious prosecution claim, he nevertheless has included time devoted to that claim in his fee petition (See Exhibit "F").  Additionally, Edwards has also asked the court to award fees for work performed on Annie Brooks' state law claim for intentional infliction of emotional distress.  (See Exhibit "F").  Obviously, neither the malicious prosecution claim, nor the intentional infliction of emotional distress claim were related to the claims upon which Edwards prevailed.  Edwards' attempt to recover fees for the malicious prosecution claim is especially troublesome, inasmuch as the Court entered a directed verdict in favor of the defendants on that particular claim.  (See Exhibit "J").  His attorneys misstate certain language contained in the *Lenard* decision and argue that "Appellate courts have rejected 'knee-jerk arguments' such as this one. . . ."  Unlike the instant case, both sides in *Lenard* were represented by three lawyers, whereas here, two lawyers tried the case on behalf of defendants.  Edwards' position begs the question:  Would a fee-paying client pay three lawyers a combined hourly rate of $900.00 to attend a four-day trial?  The defendants do not begrudge Edwards' right to have two lawyers represent him, but simply argue that assigning three lawyers to try a case in which four witnesses testified in plaintiff's case in chief is unreasonable and unnecessary, and should not be compensated.   A considerable portion of the work performed by the three lawyers during trial was devoted to Ms. Brooks' case, and the defendants prevailed on those claims.  Nevertheless, in many instances, the plaintiff's counsels have failed to exclude work performed on Ms. Brooks' case from their fee petition.

The billing records submitted by plaintiff's counsels contain numerous entries which indicate that they are seeking fees for work that is unrelated to the claims on which Edwards prevailed.  Moreover, Edwards has made no effort to identify the work that was devoted to the claims in which he prevailed, and argues, albeit in a conclusory, dismissive manner, that the various claims asserted, including Annie Brooks' claims, "involve a common core of facts or are based on related legal theories."  (See page 4 of Edwards' memorandum.)  It is unrealistic to expect either the defendants or this court to determine exactly how opposing counsels spent their time, and thus, the blame lies with them and they should bear the consequences.  *See, Tomazzoli*, 804 F.2d 93, 97-8, Note 5 (7th Circuit 1986); *JMS Development Company*, 2002 WL 31101664; *Kinney v. Federal Security, Inc.*, 2002 WL 31017644.  In view of Edwards' patent refusal to identify the work that was devoted to the claims on which he prevailed, the fee request should be denied in its entirety or be drastically reduced.

**C.**      **Edwards' attorneys have over-billed for intra -office conferences.**

A review of the time records submitted by plaintiff's counsel's shows that they engaged in an unreasonable number of conferences, meetings and discussions and have over-billed for those alleged conferences.  Defendants have identified each of these conferences in Exhibit "F".

**D.**      **Inasmuch as this was a simple, straightforward civil rights case, having three attorneys try this case was excessive and unnecessary.**

It took four days to try this case to verdict, and Edwards' counsels called a total of four witnesses in their case in chief.   Mr. Willis' participation was limited to cross-examining Donald Rogowski and giving the rebuttal argument. Opposing counsels make no effort to explain or justify why it was necessary to assign three attorneys to his trial.  They merely contend that arguments of this nature are "knee jerk" and that "courts have found no reason why civil rights plaintiffs should b [sic] limited to a legal team with fewer [sic] than necessary to handle the

case." However, Edwards and his attorneys do not even attempt to explain why three attorneys were needed to try this case. Their failure to address this obvious question speaks volumes.

###### E.    Edwards all but concedes that he is not entitled to recover various appearance fees, court reporter attendance fees and certain subpoena fees.

Edwards is asking this court to assess fees and costs that are not recoverable under the local rules. Precedent teaches that appearance fees charged by court reporters are not recoverable and therefore must be denied. See *Alek v. University of Chicago Hospital*, 2002 WL 1880706 at 2 (N.D Illinois August 14, 2002) (limiting per-page recovery to three hours with no additional appearance, attendance, or sitting fee); *In re Meyer*, 1998 WL 160989 at 3 (Northern District, Illinois, April 1, 1998) (limiting per-page recovery to three hours with no additional appearance, attendance, or sitting fee). Oddly enough, when the shoe was on the other foot and Mr. Willis' was opposing a cost petition, he argued that attendance fees are not recoverable (See Exhibit "G", attached hereto). Accordingly, the appearance fees sought by Mr. Edwards should be denied ($375).

Likewise, fees associated with the serving of subpoenas on doctors Karim and Perry should also be disallowed. Neither physician testified at trial. With respect to Dr. Perry, Edwards neglects to mention that his counsels failed to disclose Dr. Perry is a witness, and thus, she was barred. Since neither physician testified at trial, Edwards is not entitled to recover these costs. Likewise, the charges sought in connection with plaintiff's attempt to subpoena Angela Moschetta and Madonna Schultz are not recoverable, since neither individual testified at trial.

###### F.    Counsels have billed for non-legal work performed by attorneys.

The billing records contain numerous entries which show that Edwards' attorneys are seeking fees for non-legal work or work more appropriately performed by paralegals, legal

assistants, or secretaries, including deposition abstracting.[1]  Defendants have identified specific entries wherein Edwards' attorneys have charged up to $450 per hour to abstract depositions. (See Page 1 of Exhibit "F", defendant's objections to plaintiff's fee requests).  In *Oviedo v. Jones, et al.*, 99 C 5216, Judge Mason found that attorneys should not be abstracting depositions at a rate of $300 per hour.  (See Exhibit "H").

### G.    Brendan Shiller should not be allowed to recover fees for work performed before he filed his appearance on behalf of Donald Edwards.

Mr. Shiller's time records begin on February 8, 2008.  A review of the court docket indicates that Mr. Shiller filed is appearance on behalf of Annie Brooks on February 14, 2008. (See Docket No. 79).  He did not appear on behalf of Mr. Edwards until February 20, 2008.  As a result, any fees generated during the period of February 8, 2008, through February 21, 2008, should not be allowed (14.3 hours).  (See Exhibit "I", attached hereto).

### Conclusion

For the reasons stated above, Edwards' fee petition should be denied in its entirety and the request for lodestar fees should be denied.  Alternatively, any lodestar fee requests should be adjusted downward and the hours and activities identified by the defense as unrelated, unreasonable, excessive and unnecessary should be disallowed.  Additionally, should the court award fees, the award should be limited to 1/3 of the amount awarded to Mr. Edwards.

LITCHFIELD CAVO, LLP.

Patrick J. Ruberry, Esq. (06188844)
LITCHFIELD CAVO, LLP                    By:    /s/ Patrick J. Ruberry_____
303 West Madison Street , Suite 300            Attorneys for the defendants,
Chicago, IL 60606-3300                         Donald Rogowski and Leslie Shankle
(312) 781-6677
(312) 781-6630 fax

---

[1] *Oviedo v. Jones, et al.*, 99 C 5216

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, being first duly sworn upon oath, depose, and say that I caused to be served the foregoing Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, Eastern Division, a copy of which was then forwarded to each attorney of record by CM/ECF on the 15th day of July, 2008.


/s/ Patrick J. Ruberry

Patrick J. Ruberry, Esq. (06188844)          Attorneys for the defendants,
LITCHFIELD CAVO, LLP                         Donald Rogowski and Leslie Shankle
303 West Madison Street , Suite 300
Chicago, IL 60606-3300
(312) 781-6677
(312) 781-6630 fax