IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD EDWARDS and ANNIE BROOKS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 06 C 3110 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| STEPHEN ROGOWSKI, PHILIP NEGRON, and | ) | |
| LESLIE SHANKLE, officers of the Melrose Park | ) | |
| Police Department, and THE VILLAGE OF | ) | |
| MELROSE PARK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

After a four-day trial, a jury returned a verdict partially in favor of the plaintiffs in their civil-rights lawsuit against officers of the Melrose Park, Illinois police department. Following the verdict, the parties were unable to reach an agreement on attorneys' fees and costs. Pursuant to Local Rule 54.3, they have filed a joint statement cataloguing their disagreements. For the following reasons, the court GRANTS in part plaintiff Edwards's motion for attorney's fees and costs, awarding fees in the amount of $83,743 and costs in the amount of $2,102. The court also GRANTS in part the defendants' motion for costs, awarding them $178. The court DENIES defendant Negron's motion for costs.

### I. Background

This case revolved around Donald Edwards's encounter with Melrose Park police officers on June 23, 2005, during an afternoon visit to his mother's home in the Melrose Commons Senior Residences. Edwards alleged that, without provocation, Officer Stephen Rogowski and two other officers dispersed oleoresin capsicum, or pepper spray, at his face,

tackled him to the ground, and beat him.  His mother, Annie Brooks, observed the attack, which occurred outside her home.  Edwards was arrested, and Officer Philip Negron drove him to a police station.  There, Edwards alleged, he was handcuffed behind his back while officers slammed his face into a metal table and approximately six officers beat him until he was unconscious.

In the plaintiffs' complaint, Edwards advanced claims of excessive force and false arrest under 42 U.S.C. § 1983, against defendants Rogowski, Negron, and Leslie Shankle, along with other, unnamed officers of the City of Melrose Park police department.  He also alleged state-law claims against the officers for battery and malicious prosecution, and he advanced those same claims under a respondeat superior theory against the Village of Melrose Park.  Finally, Brooks alleged state-law claims for intentional infliction of emotional distress.

Not all of these claims were presented to the jury.  Prior to trial, Edwards voluntarily dismissed the false-arrest claim against Negron.  On the second day of trial, the court granted Brooks's oral motion to voluntarily dismiss her intentional infliction of emotional distress claim against Negron, and the court dismissed Edwards's claim of malicious prosecution against all defendants.  On the third day of trial, the court directed a verdict in Negron's favor with respect to Edwards's excessive-force claims related to events occurring in the police station.  Finally, the plaintiffs did not present their respondeat superior theory to the jury.

After the plaintiffs rested their case, they proposed a settlement for $60,000—$30,000 for the plaintiffs, and $30,000 in attorneys' fees.  The defendants rejected the offer.  During the plaintiffs' closing arguments, attorney Brendan Shiller asked the jury to award the plaintiffs the much higher sum of $500,000.

On February 28, 2008, the jury returned a mixed verdict.  The jury found in Edwards's favor on the following claims:  false arrest against Rogowski and Shankle; excessive force against Rogowski; and battery against Shankle and Rogowski.  The jury found in favor of the defendant on Edwards's other claims—of excessive force against Shankle and Negron, and of battery against Negron.  The jury also rejected plaintiff Brooks's claims of intentional infliction of emotional distress against Shankle and Rogowski.  The jury awarded Edwards $29,500 in damages, of which $4,500 was compensatory and $25,000 was punitive.

The plaintiffs now move for attorneys' fees in the amount of $86,558, along with related nontaxable expenses of $2,346.  Defendants contend that, if attorney's fees are awarded, they should total no more than $29,066, along with $1,727 in related non-taxable expenses.  Defendants Rogowski, Shankle, and Negron also seek costs from plaintiff Brooks in the amount of $4,435, and Defendant Negron seeks the same amount from plaintiff Edwards.

## II. Legal Standard

In a §1983 action, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988(b).  Meanwhile, "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  Fed. R. Civ. P. 54(d)(1).

## III. Analysis

As an initial matter, the defendants do not contest that Edwards prevailed.  Because Edwards successfully proved the crux of his complaint—that he was deprived of his Fourth Amendment rights to be free from false arrest and excessive force—there is no doubt that he succeeded on a "significant issue" that achieved "some of the benefit the parties sought in

bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quotation marks and citation omitted).[1]

The defendants do argue, though, that the jury awarded Edwards trivial relief ($29,500) given the amount the plaintiffs sought ($500,000). Because that award amounted to only 5% of the plaintiffs' request, defendants contend that the plaintiffs should be awarded $0, or a substantially reduced award, for their attorneys' efforts.

Ordinarily, a plaintiff who prevails in a 42 U.S.C. § 1983 suit is entitled to a fee. *See* 42 U.S.C. §1988; *Hensley vs. Eckerhart*, 461 U.S. 424 (1983). Nevertheless, "for trivial recoveries the only reasonable award of fees is zero." *Fletcher v. City of Fort Wayne*, 162 F.3d 975, 976 (7th Cir. 1998). In determining whether relief is trivial, the court must consider the difference between the judgment recovered and the recovery sought; the significance of the legal issue on which the plaintiff prevailed; and the public purpose served by the litigation. *Fisher v. Kelly*, 105 F.3d 350, 353 (7th Cir. 1997).

The jury's award of $29,500 is not trivial, and it does not warrant a significantly reduced fee, let alone an award of $0. First, the award primarily consists of punitive damages, which in and of itself demonstrates the plaintiffs' significant victory. *See Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005) ("The jury's award of punitive damages alone is sufficient to take it out of the nominal category.") Moreover, although $29,500 is only a small percentage of the amount the plaintiffs asked the jury to award, it is also nearly identical to the plaintiffs' settlement offer of $30,000 (excluding the $30,000 in fees). The defendants' refusal to pay that amount is additional evidence that the award is not trivial. Second, the legal issues on which the

---

[1] Of course, this does not entitle the plaintiffs to fees from defendant Negron. "[W]here a defendant has not been prevailed against, either because of legal immunity or on the merits, §1988 does not authorize a fee award against that defendant." *Farrar*, 506 U.S. at 109 (quotation marks and citation omitted). Because the plaintiffs were unable to prove any claim against Negron, he is not responsible for their attorney fees or costs.

plaintiffs prevailed were indeed significant; Edwards successfully prosecuted both Fourth

Amendment claims, thereby vindicating his constitutional rights. *See City of Riverside v. Rivera*,

477 U.S. 561, 574 (1986). The award of punitive damages, moreover, reflects the significance

of those constitutional deprivations in the eyes of the jury. Finally, the lawsuit served two

important public purposes: it provided a vehicle for the jurors to convey the community's

intolerance of the abusive tactics employed by the police in this case and, by recovering

damages, Edwards contributed to the deterrence of future civil-rights violations. *City of*

*Riverside*, 477 U.S. at 575. Accordingly, the court rejects the defendants' contention that $0, or

a significantly reduced amount, should be awarded.

> The defendants next argue that the court should not use the lodestar method to determine

a reasonable fee. Instead, they say the court should award what the defendants assert is a typical

contingency-fee rate of 25-40% of the recovery, which would mean a total fee award of between

$7,375 and $11,800. Their argument is that, because the plaintiffs' attorneys have no paying

clients, a contingency fee best represents the market rate for their services.

> There is a "strong presumption" that the lodestar represents the "reasonable" fee for an

attorney's services. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *JCW Invs., Inc. v.*

*Novelty, Inc.*, 482 F.3d 910, 920 (7th Cir. 2007). And, although the court may consider an

attorney's contingency-fee arrangement, it "does not impose an automatic ceiling on an award of

attorney's fees." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989); *see Webb v. James*, 147 F.3d

617, 623 (7th Cir. 1998).

> The defendants have not offered a persuasive reason to jettison the lodestar method and

instead award an estimated contingency fee. The defendants contend only that doing so would

best reflect the "market" rate for the attorneys' services. But that ignores the fact that, "were it

not for the expectation of an additional, court-ordered award if the suit was successful but yielded little in the way of damages, the plaintiff might not have been able to interest a lawyer in taking the case in the first place." *JCW Invs.,* 482 F.3d at 921 (quotation marks and citations omitted).  Because the contingency-fee arrangement has limited relevance in establishing a market rate, the court will proceed with a lodestar calculation.

To calculate the lodestar amount, the court must multiply (1) the reasonable hours expended by plaintiffs' attorneys by (2) the market rate for their services.  *Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 659 (7th Cir. 2007).  The court begins with the market rate.

A.  Market Rate

"The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* (quotation marks and citation omitted).  It is the plaintiff's attorney's burden to prove the market rate; she can do so by submitting evidence of her actual billing rate for comparable work, affidavits from similarly experienced attorneys attesting to the rates they charge clients for similar work, or evidence of fee awards she has received in similar cases.  *See id.* at 659-60; *People Who Care v. Rockford Bd. of Ed.*, 90 F.3d 1307, 1311-12 (7th Cir. 1996).  The attorney may not simply attest that her requested rate is the market rate.  *Spegon v. The Catholic Bishop of Chicago*, 175 F.3d 544, 554-56 (7th Cir. 1999).  If the plaintiff establishes a market rate, "the opposing party has the burden of demonstrating why a lower rate should be awarded." *Gautreaux*, 491 F.3d at 659-60 (citation and quotation marks omitted).

1. Standish Willis

In affidavits submitted along with his fee petition, Attorney Standish Willis attests that he is a 1983 graduate of the Illinois Institute of Technology – Chicago Kent College of Law, and

that he has been licensed to practice since 1983.  Attorney Willis has specialized in § 1983

litigation and criminal defense for over two decades, handling over 150 civil-rights cases,

lecturing attorneys on §1983 matters in continuing legal education classes, and receiving

numerous professional awards and distinctions.  Attorney Willis attests that in September 2004,

the Illinois Human Rights Commission approved an hourly rate of $400 based on his

representation in *Lyons v. Cook County*, ALS No. 10896.  Because he was awarded that rate in

2004, Attorney Willis attests that his market rate now should be $450.

Attorney Willis also submitted two affidavits from other civil-rights practitioners.  In an

affidavit dated September 14, 2004, G. Flint Taylor, an attorney for the People's Law Office

who has been licensed since 1972, attests that he specializes in § 1983 and *Bivens* litigation,

handling over 175 such cases, authoring more than sixty articles on related subjects, and

teaching seminars on these areas of law.  Taylor further attests that he is very familiar with

Attorney Willis's practice, having worked with him on several complex § 1983 cases while

Willis was a partner at Taylor's law firm.  Taylor says that he continues to work with Willis on

§ 1983 cases and co-teaches legal seminars with him.  Taylor attests that, based on his extensive

knowledge of attorneys' fees in civil-rights litigation, $400 is a reasonable hourly rate for

Attorney Willis.

In another 2004 affidavit, Steven Saltzman attests that he has been a licensed attorney in

Illinois since 1981, with significant experience litigating complex civil-rights cases in federal

court.  Saltzman attests that he is familiar with the market rates charged by civil-rights attorneys

in the Chicago area and is an editor of the Civil Rights Litigation and Attorney Fees Annual

Handbook.  Saltzman attests that he has known Attorney Willis for twenty years and has sought

his advice in civil-rights and criminal-defense cases.  Based on his knowledge and experience,

Saltzman avers that $400 is a reasonable rate for Attorney Willis.

The defendants argue that Attorney Willis has not met his burden of proof because, they say, he has not identified an opinion or order approving his requested hourly rate. They add that the Taylor and Saltzman affidavits provide little value because neither identifies a client who has actually paid a $400 hourly rate, and the affiants' subjective beliefs about reasonable rates are irrelevant. The defendants' lead attorney offers his own rate of $130 in this trial as a point of comparison, and contends that Attorney Willis's rate should be set at $225.

The court gives very little weight to Attorney Willis's attestation that $450 would be a reasonable rate for him. An attorney's own self-serving affidavit attesting to a market rate—or in this case a "reasonable" rate—is simply inadequate. *Spegon*, 175 F.3d at 554-56. Similarly, the court agrees with the defendants that Taylor's and Saltzman's opinions about a reasonable rate for Attorney Willis, too, are not very useful. Rather than attesting to fee awards they (or Willis) have received in similar cases, or to rates they've charged paying clients (if they have any), both affiants simply assert that a $400 rate is reasonable based on their experience. *See Barnett v. City of Chicago*, 122 F. Supp. 2d 915, 917 (N.D. Ill. 2001) (Bucklo, J.) (noting that affidavits from other attorneys attesting that the requested rates are reasonable are "not helpful."). The court does not reject entirely their opinions; after all, Saltzman's familiarity with market rates is evident from the fact that he edits an attorney-fee handbook for civil-rights litigation. But the affidavits would be much more useful if they offered examples of comparable fees charged or awarded in similar cases litigated in this area. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (attorney should submit evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.")

Nevertheless, Attorney Willis's attestation that in 2004 the Illinois Human Rights Commission approved an hourly rate of $400 for him certainly is evidence of his market rate for similar work. *See People Who Care*, 90 F.3d at 1312. And, although that rate is substantially more than the rate defendants' lead counsel charged during this trial, there is no reason to believe that defense counsel's billing rate is "a proxy for what the market will bear" for attorney Willis's services. *Gautreaux*, 491 F.3d at 649. Moreover, the court notes that defendants do not object to Brendan Shiller's claimed rate of $225 per hour (see below), even though Shiller has much less experience than does Willis.

The court concludes, based on Attorney Willis's submissions, that $400 is a reasonable hourly rate for his services. The court declines to award the requested rate of $450 because it is not adequately supported by probative evidence.

2. Brendan Shiller

Defendants do not object to Attorney Shiller's claimed hourly rate of $225; he has identified clients who have paid him that amount for legal work.

3. Angela Lockett

In support of her market rate, Attorney Angela Lockett submitted her own affidavit and that of Attorney Willis. Willis attests that Lockett is a 2004 graduate, *cum laude*, of the John Marshall Law School, where she was a member of the Law Review. He says Attorney Lockett has handled several civil-rights cases, has second-chaired five federal criminal trials, and has argued before the Seventh Circuit. Both Attorney Lockett and Attorney Willis attest that in October 2007, in *Thomas v. City of Chicago*, No. 06 C 757, a civil-rights case involving claims of excessive force, Judge Kennelly awarded Attorney Lockett reasonable attorney's fees at an hourly rate of $225 as a discovery sanction against the City of Chicago. Attorney Willis also

attests, as a person familiar with rates generally charged by civil-rights practitioners in small firms, that $225 is a reasonable hourly rate given Attorney Lockett's skills, experience, and knowledge.

Defendants challenge this evidence on multiple grounds. First, they argue that Attorney Lockett has not identified an opinion or order approving her requested rate. The defendants note that the docket in the *Thomas* case does not include an order approving her hourly rate, and that Attorney Lockett has not submitted a receipt showing that the City paid the fees. Second, using affidavits from Kathleen Ropka and Shehnaz Mansuri, two civil-rights attorneys with more experience than Attorney Lockett, the defendants argue that her requested rate is above market. Defendants contend that $165 would be a reasonable hourly rate for Attorney Lockett.

The defendants' arguments are unpersuasive. Both Attorney Willis and Attorney Lockett have sworn under oath that Judge Kennelly awarded Lockett fees at an hourly rate of $225. They are not obliged to submit any additional evidence of that fact; the attorneys' affidavits are evidence of a fee award in a similar case, which in turn is evidence of Attorney Lockett's market rate. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 408 (7th Cir. 1999); *People Who Care*, 90 F.3d at 1312. Additionally, the affidavits of attorneys Ropka and Mansuri do not suggest that Attorney Lockett's requested rate is substantially above-market. Attorneys Ropka and Mansuri, who in 2006 had been practicing for approximately 13 years and 8 years, respectively, both charged an hourly rate of $250 at the time. Although Lockett had approximately four years' experience when she tried this case in 2008, she asks for $25 less than Ropka's and Mansuri's 2006 rate. Moreover, as plaintiffs note, the defendants do not contest that $225 is a reasonable hourly rate for Attorney Shiller, even though he has only one more year of civil-rights litigation experience than Attorney Lockett.

Having considered both the plaintiffs' and the defendants' submissions, the court concludes that an hourly rate of $225 is reasonable for Attorney Lockett.

4. Teniece Harris

In support of Attorney Harris's market rate, the plaintiffs submit only Attorney Willis's affidavit.  He attests that Attorney Harris is a 2000 graduate of the Northern Illinois University College of Law.  According to Willis, Attorney Harris has handled many civil-rights cases, has co-tried a three-week trial in a § 1983 case, and has co-tried several federal criminal defense cases.  Attorney Willis attests, as a person familiar with rates generally charged by civil-rights practitioners in small firms, that $300 is a reasonable hourly rate given Attorney Harris's skills, experience, and knowledge.

Defendants complain, again, that Attorney Harris has not identified an opinion or order approving her requested rate.  They note that, like the Flint and Saltzman affidavits, Willis's attestation about a "reasonable rate" for Attorney Harris has little probative value. They argue that Harris's hourly rate should be reduced to $175.

The court agrees with the defendants that the evidence submitted in support of Attorney Harris's rate is meager.  There is no evidence that Attorney Harris has been awarded her requested rate, and Attorney Willis's affidavit, while admissible, is not compelling.  *See Uphoff*, 176 F.3d at 407-08.  Nevertheless, there is evidence that both Attorney Lockett and Attorney Shiller—who have been civil-rights attorneys for less time than Attorney Harris— either have been awarded or actually paid a $225 hourly rate.  And the defendants themselves submitted evidence that $250 was a reasonable rate in 2006 for Mansuri, who at the time had

approximately the same amount of experience as Attorney Harris had when she worked on this case.

Accordingly, the court declines to award the requested hourly rate of $300 because it is not adequately supported by the evidence. The court concludes instead that $250 is a reasonable rate for Attorney Harris.

B.  Reasonableness of Hours Expended

Defendants next submit multiple objections to the plaintiffs' attorneys' accounting of the hours expended on this case. They contend that the attorneys have (1) billed for time spent on losing claims; (2) engaged in block-billing; (3) billed excessive hours for intra-office conferences; (4) billed excessive hours for nonattorney tasks; and (5) billed for Attorney Shiller's work prior to his appearance.

The plaintiffs bear the burden of showing that the number of hours expended on this case was reasonable. *Hensley*, 461 U.S. at 433. When submitting their fee request, attorneys must exercise "billing judgment," making "a good-faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary." *Id*. at 434; *Spegon*, 175 F.3d at 552.

1. Time Spent on Unsuccessful Claims

The defendants note that the plaintiffs have included in their fee request time spent on (1) the malicious-prosecution claim, for which the court directed a verdict in the defendants' favor, and (2) the intentional infliction of emotional distress claims, for which plaintiff Brooks did not prevail. The plaintiffs respond that, because all claims involved a common core of operative facts, their time spent on both successful and unsuccessful claims should be compensated.

When there is a mixed verdict, the plaintiff's attorney's work on unsuccessful, unrelated claims should not be compensated. *Hensley,* 461 U.S. at 440. But work on unsuccessful claims that are related—i.e., that involve a "common core" of operative facts and seek relief for essentially the same course of conduct—may be compensated. *Hensley*, 461 U.S. at 434-35; *Bryant v. City of Chicago*, 200 F.3d 1092, 1101 (7th Cir. 2000); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 & n.15 (7th Cir. 1983). Moreover, "[w]hen defendants are not named frivolously in connection with the same illegal conduct, it follows that the matters involving the different defendants will *always* be 'related.'" *Mary Beth G*, 723 F.2d at 1280. A good attorney will pursue all potential avenues for relief on his client's behalf and, so long as those claims are "legally and factually plausible, he is not to be penalized just because some, or even all but one, are rejected, provided that the one or ones that succeed give him all that he reasonably could have asked for." *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998) (quoting *Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir. 1987)).

Here, the plaintiffs initially advanced claims for (1) false arrest; (2) excessive force; (3) battery; (4) malicious prosecution; and (5) intentional infliction of emotional distress. The plaintiffs proved the first three claims against some of the defendants, and the unsuccessful claims against the other defendants were not frivolous. Accordingly, the court will compensate the attorneys for time spent on those related claims. Meanwhile, although the malicious prosecution claim is somewhat attenuated from the claims of excessive force and battery, it is clearly related to the false arrest claim. *See Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir. 1987) (malicious prosecution and false arrest claims related); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1579 (11th Cir. 1987) (successful and unsuccessful claims concerning false arrest,

excessive force, and malicious prosecution were related because they arose out of the "same course of conduct"). Finally, the intentional infliction of emotional distress claim involved the same core set of facts as the false arrest and excessive force claims—the only difference being that plaintiff Brooks also claimed to have been injured by the defendants' conduct.

Because the court finds that the unsuccessful claims in this litigation all related to the successful ones, the court will not categorically exclude time spent pursuing them. The court concludes that the attorneys' time was reasonably expended pursuing all related claims in this litigation, including the malicious prosecution and intentional infliction of emotional distress claims.

2. Block Billing

In a similar vein, the defendants have labeled dozens of entries "block billing" because the attorney did not specify whether the time was spent on a successful or unsuccessful claim. In a lawsuit with interrelated claims, though, it is unrealistic to expect attorneys to delineate so precisely their time. *See Bryant*, 200 F.3d at 1101 ("this type of lawsuit cannot be viewed as a series of discrete claims."). Because the court has decided to compensate the attorneys for their work on related successful and unsuccessful claims in this litigation, the attorneys' "block billing" hours will not be excluded.

3. Excessive Hours for Intra-Office Conferences

Defendants next argue that the plaintiffs "engaged in an unreasonable number of conferences, meetings and discussions." They identify 12.3 of the hours the attorneys spent in conferences as "excessive."

"There is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." *Gautreaux*, 491 F.3d at 661. And multiple lawyers, working together, may lead to more efficiency and reduced costs. *Id*. As long as the

meetings are appropriate and necessary and the billing is reasonable, the court will not exclude the hours. *Id.*

The court has reviewed the attorneys' time entries, and the hours spent in intra-office conferences are not excessive. The bulk of the time that the defendants object to was spent during an initial meeting after taking on the new client; this is a reasonable use of time to lay out a strategy and divide the work for a case. Similarly, Attorney Lockett's 1.1-hour meeting with Attorney Shiller when he joined the case was a reasonable use of time to orient him and to discuss strategy. Finally, the attorneys' conferences in preparation for the pre-trial conference and the trial are perfectly reasonable and efficient uses of time. When attorneys coordinate and share ideas before coming to court, it is more likely that the court's and the jury's time will not be wasted.

4. Excessive Charges for Non-attorney Tasks

Defendants next contend that the attorneys are seeking fees for non-legal work, or work more appropriately performed by paralegals, legal assistants, or secretaries. The only work they identify specifically is the time Attorney Willis spent abstracting depositions. They note that in *Oviedo v. Jones, et al.*, No. 99 C 5216, Magistrate Judge Mason refused to compensate at a $300 hourly rate the time a senior attorney spent abstracting depositions. Plaintiffs respond that, as a small firm, they do not have paralegals and secretaries to handle such tasks.

The court declines to pare down the hours or rate for entries that include time spent abstracting depositions. There are four such entries in Attorney Willis's fee petition, totaling 10.3 hours. Attorney Willis apparently performed the task as part of his preparation for cross-examination of the key defense witness, Officer Rogowski—whom the jury subsequently found liable for each of Edwards's constitutional claims. That result suggests Attorney Willis's time was well-spent. Although abstracting depositions will in many cases be more appropriate for a

paralegal or a junior associate, the court does not consider it an unreasonable allocation of time
and resources in this case.

5. Shiller's Work Prior to His Appearance

Finally, defendants argue that Shiller should not be compensated for hours he spent prior
to February 20, 2008, when he filed his appearance on behalf of Edwards in this court.

The court will not exclude these hours.  Courts routinely uphold fees for work done prior
to filing an appearance—including, for example, drafting a complaint—and often attorneys assist
in a case without ever filing an appearance.  This is simply not a reason to reject Attorney
Shiller's hours.  *See, e.g., Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1252 (10th Cir.
1998); *Ramos Padro v. Puerto Rico*, 100 F. Supp. 2d 99, 106 (D.P.R. 2000), *aff'd as modified*,
247 F.3d 288 (1st Cir. 2001).

C.  Downward Adjustment

Applying the lodestar method, Attorney Willis's 47.3 hours at $400/hour yields a
lodestar of $18,920; Attorney Lockett's 207.5 hours at $225/hour yields a lodestar of $46,688;
Attorney Shiller's 70.6 hours at $225/hour yields a lodestar of $15,885; and Attorney Harris's 9
hours at $250/hour yields a lodestar of $2,250.  Thus, the total fee award under the lodestar
method is $83,743, which is presumptively reasonable.  *City of Burlington*, 505 U.S. at 562;
*JCW Invs., Inc.*, 482 F.3d at 920.

The defendants argue that this amount should be further reduced, given the plaintiffs'
limited recovery.  Echoing their arguments about "trivial" relief, *supra*, they note that the
plaintiffs received only 5% of the $500,000 they requested, and that the lodestar amount is
nearly three times the damages recovered.

"Once the district court reaches an amount using the lodestar determination, it may then
adjust that award in light of the plaintiff's level of success."  *Spegon*, 175 F.3d at 557 (internal

quotation marks and citations omitted).  In a case involving related claims, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435; *Spegon*, 175 F.3d at 557. "When a plaintiff has obtained an excellent result, his attorney should recover a fully compensable fee . . . and the fee 'should not be reduced simply because the plaintiff failed to prrevail on every contention raised in the lawsuit.'" *Spegon*, 175 F.3d at 557 (quoting *Hensley*, 461 U.S. at 435).

As explained above, although the verdict was mixed, Edwards's achievement was nevertheless substantial.  Edwards was successful on the major issues in the suit—his constitutional claims—which shows that the result was "excellent," even if not complete.  *See Hensley*, 461 U.S. at 435.  And, although the jury awarded far less relief than the plaintiffs requested, they did award substantial compensatory and punitive damages.  *See Lunday v. City of Albany*, 42 F.3d 131, 134-35 (2d Cir. 1994) (upholding full lodestar fee in police abuse action seeking more than $7 million in damages where jury awarded only $35,000 in compensatory and punitive damages and found only one officer liable).  Finally, the defendants have not argued that the plaintiffs' attorneys "could have done significantly less work without jeopardizing the claims [they] did win." *Bankston v. Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1995).  Because the hours were reasonably expended given the results obtained, the court declines to adjust downward the fee.

### D. Costs

Defendants contest the following items in the plaintiffs' bill of costs: (1) appearance fees for the court reporter at depositions ($375.00); (2) service on Dr. Karim and Dr. Perry, who did not attend the trial ($150.00); and (3) attempted service on Angela Moschetto and Madonna Shultz ($93.75).

Under 28 U.S.C. § 1920, only certain items may be collected as costs.  *Winniczek v. Nagelberg*, 400 F.3d 503, 504 (7th Cir. 2005).  Those are: (1) fees of the clerk; (2) fees for transcripts; (3) fees for printing and witnesses; (4) fees for copies "of papers necessarily obtained for use in the case"; (5) docket fees; and (6) compensation of court-appointed experts and interpreters.  Of these allowable expenses, the court will only award those that are necessary and reasonable.  *See Spegon*, 175 F.3d at 559.

Although court-reporter attendance fees "are not specifically mentioned in the statute, the district court may award them in its discretion pursuant to 29 U.S.C. § 1920(2)."  *Held v. Held*, 137 F.3d 998, 1002 (7th Cir. 1998).  Meanwhile, subpoenas for witnesses who do not attend a trial may be assessed as costs if it was "reasonably expected" that their attendance would be necessary, and they held themselves in readiness to attend.  *Spanish Action Committee of Chicago v. City of Chicago*, 811 F.2d 1129, 1138 (7th Cir. 1987).

The court will allow the court reporters' attendance fees, as these were reasonably and necessarily incurred to obtain transcripts of the depositions.  But the court will not tax the defendants for the subpoenas issued to witnesses who did not attend trial because the plaintiffs have not shown that they reasonably expected that any of these witnesses' attendance would be necessary.

Accordingly, costs will be awarded in the amount of $2102.

E. Defendants' Entitlement to Costs

The defendants were jointly represented in this case, and they jointly incurred expenses in the amount of $4,345.  Defendant Negron petitions for costs in that amount because he was not found liable on any claim, and he, Rogowski, and Shankle seek that same amount from Brooks because they were not found liable on her claims.

The court denies Defendant Negron's petition for costs because he has not shown that the

defendants would not have incurred the same expenses had Negron not been named as a

defendant.  The court also denies the defendants' petition for costs to the extent that it seeks

reimbursement for expenses that were not unique to Brooks's claims—including her deposition,

which would have been taken even if she had not been a plaintiff.  The court will, however, grant

the defendants' petition for the expense of subpoenaing and copying Brooks's medical records

($178), which was necessarily and reasonably incurred only in relation to her claims.

## IV. CONCLUSION

Accordingly, the court awards plaintiff Edwards $83,743 in fees and $2,102 in costs, to

be taxed against defendants Rogowski and Shankle.  The court awards defendants Rogowski,

Shankle, and Negron $178 in costs, to be taxed against plaintiff Brooks.


Enter:


/s/ David H. Coar

David H. Coar

United States District Judge


Dated: **March 18, 2009**